UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LINDENSMITH #488856,

    Plaintiff,                                CIVIL ACTION NO. 10-13530

   v.                                         DISTRICT JUDGE BERNARD A. FRIEDMAN

MELISSA JEROME, et al.,                MAGISTRATE JUDGE MARK A. RANDON

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 16)**

    This is a *pro se* prisoner civil rights action brought under 42 U.S.C. § 1983. This matter is currently before the Court on Defendants Jerome, Thompson, DeVerney and Adams' motion for summary judgment (Dkt. No. 16). For the reasons set forth below, it is **RECOMMENDED** that Defendants' motion for summary judgment be **DENIED** as to the argument that Plaintiff failed to exhaust his administrative remedies and **DENIED WITHOUT PREJUDICE** as to Defendants' remaining arguments (*i.e.*, failure to state a claim and qualified immunity).

**I. FACTS**

    Plaintiff David Lindensmith ("Plaintiff") is a prisoner who is currently confined in the Michigan Department of Corrections ("MDOC") at the Pugsley Correctional Facility (MPF), Kingsley, Michigan. At the time the Complaint was filed, Plaintiff was incarcerated at the Mid-Michigan Correctional Facility (STF) in St. Louis, Michigan. Plaintiff claims that he was deprived of religious property, namely four books that he ordered on March 10, 2010 (Dkt. No. 20; Amended Compl.). The four books were entitled: (1) "The Progradior Correspondence" by

Keith Richmond; (2) "Three Essays on Freedom" by John Whiteside Parsons; (3) "The Unknown God" by Martin Starr; and (4) "The Magickal Essence of Aleister Crowley" by J. Edward Cornelius (*Id.* ¶ 3). Plaintiff claims to have ordered the books by internet, directly from the publisher – The Teitan Press – at the cost of $153 (*Id.* ¶ 3). Plaintiff states that these texts pertain to his religion – Thelema – which Plaintiff claims he has followed for over 30 years (*Id.* ¶ 4).

Plaintiff states that he received a "Notice of Intent/Mail Rejection" (NOI) on April 9, 2010 regarding the four books (*Id.* ¶ 5). The NOI indicated that the books were being held pursuant to MDOC Policy Directive ("PD") 05.03.118 because they did not come directly from a publisher or from an approved vendor (*Id.* ¶ 5). Plaintiff requested a hearing regarding the NOI and filed a grievance (STF-10-04-0449-15A) regarding the withheld books (*Id.* ¶ 6; Dkt. 19, App'x A).

Plaintiff alleges that Defendant Adams conducted a hearing concerning the books (Dkt. No. 20 ¶ 9). The hearing took place on May 14, 2010 (Dkt. 16; Ex. G ¶ 9; Affidavit of Defendant Adams). Plaintiff claims that Defendant Adams informed him that he had personally inspected the books and concluded that three of the four books were indeed from the publisher and, therefore, allowable (Dkt. No. 20 ¶ 9). During the hearing, Plaintiff was also informed that three of the four books were somehow misplaced in the mail room and could not be located (*Id.*). Plaintiff thus received one book on May 21, 2010 with three other books lost – one of the three missing books was determined by Defendant Adams not to be from a publisher, and thus considered contraband (Dkt. 16; Ex. G ¶¶ 10-11). Plaintiff appealed his grievance following the hearing (Dkt. 19, App'x A). Plaintiff's grievance was eventually resolved in his favor, and Plaintiff received a reimbursement for the lost books in the amount of $114.75 (*Id.*)

## II. PROCEDURAL HISTORY

Plaintiff's original Complaint alleged that several staff members at the St. Louis Correctional Facility violated his constitutional rights by denying him possession of the four books. Plaintiff's original Complaint named five Defendants: (1) Melissa Jerome (Mailroom Supervisor); (2) Billy Ray Thompson (Chaplain); (3) Wayne DeVerney (Facility Manager); (4) Bill Adams (J-Unit Assistant Resident Unit Supervisor); and (5) the State of Michigan.[1]

On November 19, 2010, Plaintiff filed a "motion for federal court intercession" and a "motion to amend/correct" (Dkt. Nos. 11, 15). On December 8, 2010, Plaintiff filed a "motion for additional sanctions" (Dkt. No. 13). The undersigned construed these three motions as a request by Plaintiff for leave to amend his Complaint. Accordingly, on January 31, 2011, the undersigned entered an Order (Dkt. No. 18) permitting Plaintiff to file an Amended Complaint by March 1, 2011. Plaintiff did file an Amended Complaint on February 22, 2011 (Dkt. No. 20). Plaintiff's Amended Complaint added five additional Defendants (Bennett, Witgen, Russell, Peet & Scott) and also added claims regarding, *inter alia*, the handling of Plaintiff's legal mail (Dkt. No. 20).

## III. ANALYSIS

### A. Plaintiff Exhausted His Administrative Remedies

Defendants' motion for summary judgment first argues that Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies with regard to the religious books. Defendants note that Plaintiff only exhausted one Step III grievance in 2010

---

[1] On September 9, 2010, the Court, *sua sponte*, dismissed Plaintiff's claims against the State of Michigan as frivolous, since such claims are barred by the Eleventh Amendment (Dkt. No. 6).

(STF-2009-06-0557), which related to being denied access to the prison law library (Dkt. 16, p. 6).

However, Plaintiff filed a Step I Grievance STF-10-04-0449-15A, dated April 27, 2010. In this grievance, Plaintiff complained of mail being improperly rejected (Dkt. No. 19, App'x A). The Step I Grievance was rejected on June 7, 2010[2] by the St. Louis Complex Facility Manager, W. DeVerney. Plaintiff then appealed to Step II; on June 1, 2010, Warden Steve Rivard acknowledged receipt of Plaintiff's Step II Grievance Appeal (*Id.*). Warden Rivard responded on June 10, 2010 to Plaintiff's Step II appeal, stating that three of the four books were approved, and that Plaintiff received one of the books (*Id.*). Warden Rivard noted that, as to the books Plaintiff had not yet received, two of them were approved and one was not approved, but none of the remaining books could be located (*Id.*). Warden Rivard informed Plaintiff that he could petition for reimbursement for the loss of his books through the institution's Prisoner Benefit Fund (PBF) (*Id.*). Warden Rivard recommended that Plaintiff complete a Step III appeal and include a "Claim Against the State of Michigan for Personal Losses Less Than $1,000," for the three books that could not be located (*Id.*). Plaintiff did so, and the State Administrative Board eventually approved a reimbursement of $114.75 for the three missing books (Dkt. 16; Ex. F ¶ 8).

The Ninth and Tenth Circuits have held that once a prisoner "has either received all 'available' remedies at an intermediate level of review or has been reliably informed by an administrator that no administrative remedies are available" his administrative remedies are

---

[2] The time-line of grievance STF-10-04-0449-15A does not entirely make sense. For instance, the Step I grievance response is dated June 7, 2010, but the Step II grievance is acknowledged as having been received six days earlier – on June 1, 2010. Most likely, the Step I response contains a typo, and should have been dated June 1, 2010 instead of June 7, 2010.

exhausted. *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004). Similarly, the Second Circuit held in *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004), that additional attempts at exhaustion are unnecessary when there is "no further 'possibility of some relief.'" *Id.* at 669; *see also Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002) ("requiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic," because it could lead to a "never-ending cycle of grievances" in which the prison always promises resolution but never follows through, preventing the prisoner from seeking redress from the federal courts).

Here, Plaintiff received all of the relief he could have received at Step III, thus grievance STF-10-04-0449-15A should be considered exhausted for purposes of the Prison Litigation Reform Act ("PLRA").  Finding exhaustion in these circumstances also furthers the goals of PLRA as Defendants were afforded an opportunity to investigate and address Plaintiff's complaints prior to being sued in federal court.  As a result, Defendants' argument that Plaintiff's Complaint should be dismissed for failure to exhaust is not well-taken and Defendants' motion for summary judgment should be denied as to this argument.

### B. Defendants' Remaining Arguments

Defendants' motion also argues that Plaintiff's claims should be summarily dismissed because Plaintiff fails to state a claim against Defendants and because Defendants are entitled to qualified immunity.  Defendants' motion for summary judgment should be denied without prejudice as to these remaining arguments.

As noted in the procedural history section above, Plaintiff filed three motions requesting, essentially, leave to amend his Complaint (on November 19, 2010 and on December 8, 2010 –

Dkt. Nos. 11, 13 & 15). Between the time Plaintiff filed those three motions and the time the undersigned granted Plaintiff such leave (on January 31, 2010 – Dkt. No. 18), Defendants Jerome, Thompson, DeVerney and Adams moved for summary judgment (on January 12, 2010 – Dkt. No. 16) seeking dismissal of Plaintiff's original Complaint. Defendants' motion for summary judgment, thus, does not analyze the claims asserted in Plaintiff's Amended Complaint (filed on February, 22, 2011 – Dkt. No. 20), which are materially different from the claims Plaintiff had originally asserted.

Furthermore, Defendants' motion, while captioned as a motion for summary judgment, is actually more akin to a motion to dismiss. Indeed, the factual section of Defendants' motion cites solely from Plaintiff's original Complaint and the arguments contained in Defendants' motion are most frequently asserted in motions to dismiss (*i.e.* failure to exhaust, failure to state a claim, etc). Since Plaintiff filed an Amended Complaint after Defendants' filed their dispositive motion, the earlier filed motion is, essentially, moot. *See e.g., Jaime v. Wells Fargo Home Mortg., Inc.*, No. 11-10302, 2011 WL 1322216, at *1 (E.D. Mich. Apr. 7, 2011) (adopting Magistrate Judge's Report and Recommendation that defendants' motion to dismiss be denied without prejudice as moot where the parties agreed to permit an amended complaint); *Williams v. Kelly*, No. 07-10999, 2007 WL 2951303, *1 (E.D. Mich. Oct. 10, 2007) (denying as moot the defendants' motion to dismiss where the complaint to which it was directed had been superseded by an amended complaint which added new defendants).

Finally, Defendants' motion for summary judgment does not address the Sixth Circuit opinions of *Figel v. Overton*, 121 F. App'x. 642 (6th Cir. 2005) and *Figel v. Overton*, 263 F. App'x. 456 (6th Cir. 2008), which both seem to the undersigned to pertain directly to the present

case. *Pro se* litigants "enjoy the benefit of a liberal construction of [their] pleadings and filings," *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). A sympathetic reading of Plaintiff's Amended Complaint suggests that Plaintiff is asserting a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 *et. seq*. Indeed, although Plaintiff's Amended Complaint does not directly assert a claim under RLUIPA as a separate and distinct count, Plaintiff does cite RLUIPA in his Amended Complaint (Dkt. 20, ¶ 20).

Defendants' motion for summary judgment does not discuss RLUIPA, nor does it discuss the binding Sixth Circuit opinions analyzing that Act. Further briefing that discusses RLUIPA and the two *Figel* cases cited above would aid the Court in determining the viability of Plaintiff's claims and, more specifically, whether Defendants are entitled to qualified immunity. As such, it is recommended that Defendants' motion for summary judgment be denied without prejudice as to the arguments concerning failure to state a claim and qualified immunity.

## IV. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants motion for summary judgment (Dkt. No. 16) be **DENIED** as to the argument that Plaintiff failed to exhaust his administrative remedies and **DENIED WITHOUT PREJUDICE** as to the remaining arguments. Defendants should be permitted to file a new dispositive motion addressing the claims raised in Plaintiff's Amended Complaint (Dkt. No. 20), addressing RLUPIA and addressing the Sixth Circuit cases cited above. If Defendants choose not to file such a dispositive motion, then Defendants should be required to file Answers to Plaintiff's Amended Complaint and this matter should proceed into discovery.

The parties to this action may object to and seek review of this Report and


Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

 Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

            s/Mark A. Randon  
            MARK A. RANDON  
            UNITED STATES MAGISTRATE JUDGE

Dated:  August 4, 2011

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, August 4, 2011, by electronic and/or first class U.S. mail.*

            *s/Melody R. Miles*  
            *Case Manager to Magistrate Judge Mark A. Randon*