UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LINDENSMITH #488856,

    Plaintiff,                                    CIVIL ACTION NO. 10-13530

    v.                                         DISTRICT JUDGE BERNARD A. FRIEDMAN

MELISSA JEROME, et al.,             MAGISTRATE JUDGE MARK A. RANDON

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION TO DISMISS (DKT. NO. 25)**

This is a *pro se* prisoner civil rights action., This matter is currently before the Court on Defendants Jerome, Thompson, DeVerney and Adams' motion to dismiss and/or for summary judgment (Dkt. No. 25). For the reasons set forth below, it is **RECOMMENDED** that Defendants' dispositive motion be **GRANTED** and that Plaintiff David Lindensmith's ("Plaintiff") entire case be dismissed, with prejudice.

**I. FACTS**

Plaintiff is a prisoner who is currently confined in the Michigan Department of Corrections ("MDOC") at the Parnall Correctional Facility (MPF) in Jackson, Michigan. At the time the Complaint was filed, Plaintiff was incarcerated at the Mid-Michigan Correctional Facility (STF) in St. Louis, Michigan. Plaintiff claims that he was deprived of religious property, namely four books that he ordered on March 10, 2010 (Dkt. No. 20; Amended Compl.). The four books were entitled: (1) "The Progradior Correspondence" by Keith Richmond; (2) "Three Essays on Freedom" by John Whiteside Parsons; (3) "The Unknown God" by Martin Starr; and (4) "The Magickal Essence of

Aleister Crowley" by J. Edward Cornelius (*Id*. ¶ 3). Plaintiff claims to have ordered the books by internet, directly from the publisher – The Teitan Press – at the cost of $153 (*Id.* ¶ 3). Plaintiff states that these texts pertain to his religion – Thelema – which Plaintiff claims he has followed for over 30 years (*Id.* ¶ 4).

Plaintiff states that he received a "Notice of Intent/Mail Rejection" (NOI) on April 9, 2010, regarding the four books (*Id*. ¶ 5). The NOI indicated that the books were being held pursuant to MDOC Policy Directive ("PD") 05.03.118 because they did not come directly from a publisher or from an approved vendor (*Id.* ¶ 5). Plaintiff requested a hearing regarding the NOI and filed a grievance (STF-10-04-0449-15A) regarding the withheld books (*Id.* ¶ 6; Dkt. No. 19, App'x A).

Plaintiff alleges that Defendant Adams conducted a hearing concerning the books (Dkt. No. 20 ¶ 9). The hearing took place on May 14, 2010 (Dkt. No. 16; Ex. G ¶ 9; Affidavit of Defendant Adams). Plaintiff claims that Defendant Adams informed him that he had personally inspected the books and concluded that three of the four books were indeed from the publisher and, therefore, allowable (Dkt. No. 20 ¶ 9). During the hearing, Plaintiff was also informed that three of the four books were somehow misplaced in the mail room and could not be located (*Id.*). Plaintiff thus received one book on May 21, 2010 with three other books lost – one of the three missing books was determined by Defendant Adams not to be from a publisher, and thus considered contraband (Dkt. No. 16; Ex. G ¶¶ 10-11). Plaintiff appealed his grievance following the hearing (Dkt. No. 19, App'x A). Plaintiff's grievance was eventually resolved in his favor, and Plaintiff received a reimbursement for the lost books in the amount of $114.75 (*Id.*).

## II. PROCEDURAL HISTORY

Plaintiff's original Complaint (Dkt. No. 1) alleged that several staff members at the St. Louis

Correctional Facility violated the Religious Land Use and Institutionalized Person Act (RLUIPA), 42 U.S.C. § 2000cc-1 by denying him possession of the four books. Plaintiff's original Complaint named five Defendants: (1) Melissa Jerome (Mailroom Supervisor); (2) Billy Ray Thompson (Chaplain); (3) Wayne DeVerney (Facility Manager); (4) Bill Adams (J-Unit Assistant Resident Unit Supervisor); and (5) the State of Michigan.

Defendants moved to dismiss (Dkt. No. 16) Plaintiff's original Complaint based upon failure to exhaust administrative remedies and based upon immunity. After Defendants filed this dispositive motion, Plaintiff was granted leave to amend, and filed an Amended Complaint (Dkt. No. 20) raising RLUIPA claims, and adding five new Defendants – Bennett, Witgen, Russell, Peet & Scott. Plaintiff's Amended Complaint requests the following relief:

A. $153.00 in actual damages from all defendants;

B. $25.00 per day, per book, for the 3 missing books; and $1025.00 for the 41 day period that 'Three Essays on Freedom' was withheld, in compensatory damages;

C. $31 million in punitive damages from both Melissa Jerome and Chaplain Billy Ray Thompson for violation of Plaintiff's Federal rights under 42 U.S.C. § 2000cc-1 (a)(1) &(2);

D. $11 million dollars in punitive damages from ARUS Adams and Facility Manager Wayne DeVerney for participating and furthering the civil conspiracy, that violated the Plaintiff's Federal rights;

E. $275 thousand dollars from Melissa Jerome for retaliating against the Plaintiff for filling a grievance against her, in violation of the Plaintiff's 1st Amendment right to petition the government for a redress of grievances;

F. An Order from the Judge, upon a finding of guilt by a jury ordering the State of Michigan to return all monies received from the Federal Government during 2010, with an Order keeping the State of Michigan from receiving Federal funds for the next thirty years, for condoning and encouraging the actions of the other defendants in this action;

G. Reimbursement of ell costs associated with the pursuit of this civil action from all defendants;

H. $1 thousand dollars in nominal damages, and $750 thousand dollars in punitive damages from defendant's Witgen, Russell, Scott, Peet, and Adams for interfering with the Plaintiff's access to the courts out of retaliation;

I. Upon a finding of guilt by a jury, a finding of Contempt of Court against each of the defendants Adams, Peat, and Scott, and imposition of a $150 thousand dollar fine, or fined as the Court deems appropriate.

(Dkt. No. 20)

It does not appear that the five newly named Defendants have been served with the Amended Complaint or with a Summons.

The undersigned issued a report and recommendation (Dkt. No. 24) that Defendants' first dispositive motion (Dkt. No. 16) should be denied as to the exhaustion argument, and denied without prejudice as to the remaining arguments. The parties did not object to that recommended disposition, and the Court adopted (Dkt. No. 29) the undersigned's recommendation. Defendants then filed a second dispositive motion (Dkt. No. 25) focusing on immunity.

### III. ANALYSIS

*A. Legal Standards*

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. As the Supreme Court has recently made clear, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), quoting *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Although the

pleader is given the benefit of the doubt as to inferences that can be derived from the allegations, that deference "does not extend to facts which are not 'well-pleaded.'" *Greenberg v. Compuware Corp.*, 889 F.Supp.1012, 1015-1016 (E.D. Mich. 1995).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56©, the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the

>   movant is entitled to it; or
>
>   (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### B. *Plaintiff's Claims Against Defendants In Their Official Capacity Are Barred By Eleventh Amendment Immunity*

Plaintiff has sued Defendants in their official capacity. An official capacity lawsuit is the same as a lawsuit against the State and is barred by Eleventh Amendment immunity, unless the State has consented to suit or Congress has validly abrogated that immunity. *See* U.S. CONST. amend. XI; *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100-101 (1984); *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

In *Sossamon v. Texas*, __ U.S. __, 131 S.Ct. 1651 (2011), the Supreme Court recently held that the private action provision of RLUIPA did not clearly and unequivocally waive a state's sovereign immunity from suit for money damages by a prisoner whose free exercise rights were allegedly burdened. *See Sossamon*, 131 S.Ct. at 1658–59 ("RLUIPA's authorization of 'appropriate relief against a government,' § 2000cc–2(a), is not the unequivocal expression of state consent that

our precedents require. 'Appropriate relief' does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can 'be certain that the State in fact consents' to such a suit.") (citation omitted). Thus, Plaintiff's claims for money damages against Defendants in their official capacities are squarely barred by Eleventh Amendment immunity, and should be dismissed. *See also Cardinal v. Metrish,* 564 F.3d 794, 801 (6th Cir. 2009).

### C. Plaintiff's Claims Against Defendants In Their Individual Capacities Should Be Dismissed

While *Cardinal* and *Sossamon* clearly determined the issues related to Plaintiff's official capacity claims, the Sixth Circuit has reserved ruling on whether RLUIPA allows for monetary damages against persons in their individual capacities. *See Heard v. Caruso*, 351 Fed. Appx. 1, 10 n. 5 (6th Cir. 2009) ( "This court has not ruled, however, on whether RLUIPA authorizes suits for monetary damages against state officials in their *individual* capacities) (emphasis in original). However, several other federal appellate courts have considered precisely that issue and all have held that RLUIPA, as an exercise of Congress' Spending Clause power, does not authorize a claim for damages against state employees in their individual capacities. *See Nelson v. Miller*, 570 F.3d 868, 877-79 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 187-89 (4th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1274 (11th Cir. 2007). Because the reasoning of those cases is persuasive, I find that the Sixth Circuit would likely follow suit.

RLUIPA was enacted pursuant to Congress' powers under the Spending Clause. *See Cutter v. Wilkinson*, 423 F.3d 579 (6th Cir. 2005). "Such legislation has been described as creating a 'contract' between the federal government and the state that receives the federal funds." *Nelson*, 570 F.3d at 887. Only by accepting federal funds does the state become liable for any noncompliance

with conditions imposed by the statute. *Id.* The individual defendants here do not receive any funds from the federal government. Therefore, they are not a party to the "contract" and cannot liable for non-compliance with the conditions imposed by RLUIPA. *See, e.g., Smith*, 502 F.3d at 1273 ("Congress cannot use its Spending Power to subject non-recipient of federal funds, including a state official acting [in] his or her individual capacity, to private liability for monetary damages."); accord *Davis*, 526 U.S. at 641 (finding that under Title IX, another Spending Power statute, "[t]he Government's enforcement power may only be exercised against the funding recipient ... and we have not extended damages liability under Title IX to parties outside the scope of this power.").

Thus, Plaintiff's RLUIPA claims for money damages against Defendants in their individual capacities should also be dismissed. *See Froman v. Kentucky Dept. of Corrections*, Case No. 3:08CV-P243-H, 2010 WL 1416682 (W.D. Ky. March 31, 2010); *but see, Atkins v. Christiansen,* Case No. 1:08–cv–972, 2011 WL 4527364 (W.D. Mich. June 6, 2011) (permitting RLUIPA claims for money damages to proceed against the defendants in their individual capacities).

### *D. Plaintiff's Claims Against The Remaining Unserved Defendants Should Be Dismissed*

Defendants Jerome, Thompson, DeVerney and Adams have moved to dismiss Plaintiff's case. Although immunity is an affirmative defense that must typically be raised by a defendant, on the facts of this case it applies with equal force to those who are unserved (Defendants Bennett, Witgen, Russell, Peet & Scott).[1] The foregoing analysis concerning Eleventh Amendment immunity is not unique to any Defendant.[2] Defendants Jerome, Thompson, DeVerney and Adams have raised

---

[1] The Court already dismissed Plaintiff's claims against Defendant State of Michigan, as barred by Eleventh Amendment immunity (Dkt. No. 6).

[2] To the extent that Plaintiff's claims against the newly named unserved Defendants relate to the handling/processing of Plaintiff's legal mail in this matter, such allegations are simply not supported by the record nor by the docket in this case. Plaintiff's Amended Complaint (Dkt. No. 20) alleges, generally, that the newly added

the affirmative defense of immunity, and Plaintiff has had multiple opportunities to respond that immunity does not bar his claims (Dkt. Nos.19, 31). He has failed to do so.

Under these circumstances, it would be futile and an uneconomical use of judicial resources to conduct further proceedings against the non-moving and unserved Defendants. *See Monk v. Bailey*, No. 1:08–CV–903, 2010 WL 4962960, at *4 (W.D. Mich. Oct. 28, 2010) report adopted by 2010 WL 4963013 (W.D. Mich. Dec.1, 2010) (dismissing six unserved "Doe" defendants who allegedly denied plaintiff medical treatment where the plaintiff could not establish exhaustion as to any prison personnel); *see also Moore v. Thomas*, 653 F.Supp.2d 984, 1003 (N.D. Cal. 2009) ("Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) [p]laintiff has been provided an opportunity to address the controlling issues."); *Blake v. McCormick*, No. 5:06–cv–273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007) (concluding that successful affirmative defense of lack of exhaustion raised by defendants who were served in a prisoner civil rights case also "inure[d] to the benefit of any unserved or defaulting defendants"); *cf. Laubach v. Scibana*, No. Civ–05–1294–F, 2008 WL 281545 at * 12 (W.D. Okla. Jan.31, 2008) (holding that affirmative defenses asserted by served defendants were "equally applicable to the claims against the unresponsive and unserved defendants," and dismissing complaint as to unserved defendants for failure to state a claim upon which relief may be granted).

---

Defendants (Bennett, Witgen, Russell, Peet & Scott) prevented Plaintiff from sending out legal mail in a timely manner and/or prevented Plaintiff from photocopying certain exhibits that he wished to submit to the Court. However, the Court received and reviewed all of Plaintiff's responses to Defendants' dispositive motions (Dkt. Nos. 19 & 31) and received and reviewed Plaintiff's own motions (Dkt. Nos. 11, 12, 13, 15 & 27). The Court never found that Plaintiff filed to timely respond to Defendants' dispositive motions. Furthermore, this report and recommendation suggests that Plaintiff fails to state a claim against Defendants based upon purely legal grounds, wholly unrelated to any additional exhibits Plaintiff may have wished to submit.

Furthermore, the Sixth Circuit has repeatedly held that when a meritorious affirmative defense is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Beach v. Ohio*, No. 03–3187, 2003 WL 22416912, at * 1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02–5294, 2002 WL 31780936, at * 1 (6th Cir. Dec.11, 2002); *Duff v. Yount*, No. 02–5250, 2002 WL 31388756, at *1–2 (6th Cir. Oct. 22, 2002). Plaintiff's claims in this case are squarely barred by immunity, therefore, Plaintiff's entire suit should be dismissed, with prejudice.

## IV. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' motion to dismiss and/or motion for summary judgment (Dkt. No. 25) be **GRANTED**. It is further recommended that Plaintiff's claims against the unserved Defendants also be dismissed. Accordingly, Plaintiff's entire case should be dismissed, with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                s/Mark A. Randon
                                                MARK A. RANDON
                                                UNITED STATES MAGISTRATE JUDGE
Dated: October 25, 2011

*Certificate of Service*

    *I hereby certify that a copy of the foregoing document was served on the parties of record on this date, October 25, 2011, by electronic and/or first class U.S. mail.*

                                                *s/Melody R. Miles*
                                                *Case Manager to Magistrate Judge Mark A. Randon*